UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALEM HOSPITAL )<br><br>Plaintiff, )<br><br>v. )<br><br>AFSCME, COUNCIL 93, )<br><br>Defendant. ) | C.A. No. 03-12650-RGS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT

Plaintiff, Salem Hospital, submits this Memorandum of Law in support of its Motion for Judgment. The Court should enter judgment for Salem Hospital and vacate the Arbitrator's decision because the Arbitrator exceeded her authority by ignoring the clear and unambiguous language of the collective bargaining agreement and because the Arbitrator's decision was based on palpably faulty reasoning.

## PRELIMINARY STATEMENT OF ISSUE AND FACTS

This is an action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C.§ 185, to vacate an arbitration award issued under a collective bargaining agreement ("Agreement") that the Plaintiff, Salem Hospital (the "Hospital"), has with the Defendant, AFSCME, Council 93, AFL-CIO (the "Union"). The Agreement covers all registered nurses who work at the Hospital, including those assigned to the Post Anesthesia Care Unit (PACU). The Union has filed a counterclaim requesting the Court to confirm the arbitrator's award and to order compliance.

9600348_1

The record is complete and there are no facts to be tried. The Agreement between the parties is before the Court as <u>Exhibit A</u> to the Hospital's Complaint. The decision of the Arbitrator, Diane Zaar Cochran, Esq., (the "Arbitrator") is before the Court as <u>Exhibit B</u> to the Hospital's Complaint.

A.     <u>The Issue Before the Arbitrator.</u>

The issue before the Arbitrator for decision was:

> "Whether the Hospital violated Article 8.12(a) of the Parties Collective Bargaining Agreement when it assigned nurses on-call duties during the night portions of the 48 hour weekend period? If so, what shall be the remedy."

Arbitrator's Decision, p. 2.

B.     <u>The Findings of Fact of the Arbitrator.</u>

The Arbitrator made the following findings of fact:

1.     The sixth sentence in § 8.12(a) of the Agreement was added to the Agreement in November 1992 when the PACU night shift was eliminated. The sixth sentence reads: "All Post Anesthesia Care Unit nurses (PACU) on a rotating basis, will share on-call from 12:30 a.m. to 6:30 a.m., Tuesday through Saturday." <u>Agreement</u>, § 312(a), p. 29. Arbitrator's Decision, p. 4.

2.     Prior to 1993, and continuing after 1993, the Hospital consistently assigned PACU nurses to weekend on-call duty under the terms of § 8.12(a), as it read before the addition of the new sixth sentence. Thus, § 8.12(a), without the sixth sentence, i.e. as it existed prior to November 1992, set forth the right of the Hospital to assign on-call and the method for selecting nurses to stand on-call as follows:

> "The Hospital reserves the right to establish and disestablish on-call in particular units when it determines such is necessary. . . . To the extent practical, on-call within a particular unit shall be shared on a fair and equitable basis. It will look first to qualified volunteers and

then assign the least senior qualified nurses in the unit to fill the
number of on-call positions."

Agreement, § 8.12(a), p. 27. Arbitrator's Decision, p. 4.

   3.  The Hospital had "determined that on-call assignment of PACU nurses on weekend nights was necessary in order to provide adequate patient safety." Arbitrator's Decision, p. 4. With respect to that determination, the Arbitrator found: "I agree with the Employer that its determination that the high skill set of PACU nurses was required for patient safety care during weekend nights was not arbitrary, capricious, or without a reasonable basis. The Hospital presented compelling testimony regarding its decision that having PACU nurses on-call during weekend night hours was a reasonable, logical and safety-sensitive decision." Arbitrator's Decision, p. 7-8.

  C. The Arbitrator's Authority Under the Agreement

The Agreement between Salem and the Union is very unusual, and different from most collective bargaining agreements, in that it does not give an arbitrator authority to just interpret and apply the terms of the collective bargaining agreement. Rather, the parties have agreed that, in applying the terms of the Agreement, the Arbitrator has very limited authority and must accept any reasonable interpretation of the Hospital, unless it is arbitrary and capricious or in contravention of express language which is not subject to interpretation. Thus, the Agreement states:

> "No arbitrator shall have any authority or power to reverse, set aside or modify any determination made by the Hospital pursuant to the provisions of this Agreement unless she or he finds that such determination was arbitrary or capricious, without any reasonable basis or in contravention of express language of this Agreement which is not subject to interpretation."

Agreement, § 4.1, p. 8. In short, if the particular language at issue is "subject to interpretation", then the Hospital's interpretation must be upheld as long as it is not arbitrary or capricious.

The Agreement also forbids the Arbitrator to modify the contract:

> "There shall be no right in arbitration of a grievance to obtain, and no arbitrator shall have any authority or power directly or indirectly to award or determine any change in, modification or alteration of, addition to, or detraction from, any of the provisions of this Agreement."

Agreement, § 6.4, p. 14.

### D.     The Powers Reserved Exclusively to the Hospital.

The Agreement also has a strong management rights clause which lists certain "rights, functions, prerogatives and discretion of management" that are "vested exclusively in the Hospital." Agreement, § 4.1, Management Rights, p. 8. One such exclusive vested discretionary right and prerogative is as follows:

> "[T]he Hospital reserves to itself, subject only to the express provisions of this Agreement, the management of the Hospital and the right to: direct the nurses and assign work. . . .; determine and redetermine policies, practices, methods, procedures and conditions related to . . . staffing."

Agreement, § 4.1, p. 8. And with respect to on-call assignments in § 8.12(a), the parties even agreed to a special reservation of rights to the Hospital to establish or disestablish on call during the term of the Agreement when the Hospital determines it is "necessary." Thus, the first sentence of § 8.12(a) states: "The Hospital reserves the right to establish and disestablish on-call in particular units when it determines such is necessary."

## ARGUMENT

The Court's role in reviewing an arbitrator's decision is admittedly limited and "[u]nless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." See W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764 (1983) (quoting Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960)); see also United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). Therefore, the Court may not vacate an arbitrator's award merely because the arbitrator misinterprets a contract, where there is "room to do so." Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1988). However, despite this deferential standard, the arbitrator's power is not limitless. "The arbitrator may not ignore the plain language of the contract . . . ." United Paperworkers International Union, AFL-CIO v. Misco, supra, 484 U.S. at 38. Arbitral awards are invalid when the arbitrator exceeds the scope of his/her authority as set forth in the contract. For example, if the arbitrator fails to apply the plain meaning of the contract, then he/she has exceeded his/her authority. See Georgia-Pacific Corporation v. Local 27, United Paperworkers International Union, 864 F.2d 940, 944 (1st Cir. 1998) (arbitrator exceeded his authority because "[i]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the Agreement."); El Mundo Broadcasting Corporation v. United Steelworkers of America, 116 F.3d 7, 10 (1st Cir. 1997) (affirming the vacating of an arbitral award because arbitrator ignored the "essence" of the agreement "because the arbitrator enlarged the agreement and exceeded his authority under the CBA."); S.D. Warren Co. v. United Paperworkers' Int'l. Union, AFL-CIO, Local 1069, 845 F.2d 3, 8 (1st Cir. 1988)

(arbitrator exceeded his authority by failing to apply the unambiguous language and thereby "altered" the terms of the agreement).

In addition, where it can be demonstrated that the "sole articulated basis for [the arbitral] award was concededly in error," so that a different result would have been reached, then the arbitral award is not enforceable and the issue must be resubmitted to arbitration. See Electronics Corporation of America v. International Union of Electrical, Radio and Machine Workers, AFL-CIO, 492 F.2d 1255, 1257 (1st Cir. 1974) (vacating award and ordering resubmission to arbitration because the sole articulated basis for [the arbitrator's] award was in error.)

The Court of Appeals for the First Circuit has established that an arbitrator exceeds her authority under the collective bargaining agreement when "the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Companies, Inc., 776 F.2d 19, 21 (1st Cir. 1985) (citing Bettencourt v. Boston Edison Co., 560 F.2d 1045 (1st Cir. 1977)). In this case, the Arbitrator's decision should be vacated because she exceeded her authority by ignoring the plain language of the contract and because her reasoning was palpably faulty.

I. THE ARBITRATOR EXCEEDED HER AUTHORITY BY FAILING TO APPLY THE HOSPITAL'S REASONABLE INTERPRETATION OF THE FIRST SENTENCE IN SECTION 8.12(a).

As noted above, the authority of the arbitrator is severely limited to determining only whether the Hospital's interpretation and application of the contract language is without any reasonable basis or is arbitrary and capricious. The Management Rights

clause lists as one of the prerogatives of management, that is "vested exclusively" in the Hospital, the right "to assign work" and to "determine and redetermine policies, practices, methods, procedures and conditions related to . . . staffing . . ." Agreement, § 4.1. Even more particularly with respect to a "reserve" right relating to on-call, the parties agreed that "The Hospital reserves the right to establish and disestablish on call in particular units <u>when it determines such is necessary</u>." Agreement, § 8.12(a). (emphasis added).

The Hospital's interpretation of the foregoing language is that during the term of the agreement, when it makes a determination that it is "necessary", it may change how and to whom it may assign on-call. The Arbitrator found that the factual predicate for application of this language, i.e. "when [the Hospital] determines such is necessary" existed and agreed that the Hospital's determination of that necessity was a reasonable, "safety sensitive" decision. See Arbitrator's Decision, pp. 7-8.[1]

This first sentence of § 8.12(a) is "subject to interpretation," Agreement, § 6.4, and the Hospital's position is a reasonable interpretation of that sentence. Thus, the Arbitrator was required by the plain meaning of the limited authority given her in § 6.4 of the Agreement to uphold the reasonable determination by the Hospital of its right to require on-call during the term of the agreement based on its determination that the on-call was "necessary", pursuant to the first sentence of § 8.12(a).

Thus, the Arbitrator exceeded her very limited authority and the arbitral award must be vacated.

---

[1] "I agree with the Employer that its determination that the high skill set of PACU nurses was required for patient care during the weekend nights was not arbitrary, capricious or without a reasonable basis. The Hospital presented compelling testimony regarding its decision that having PACU nurses on-call during weekend nights was a reasonable, logical and safety-sensitive decision."

II. THE ARBITRATOR EXCEEDED HER AUTHORITY BECAUSE HER REASONING WAS PALPABLY FAULTY WITH RESPECT TO THE SOLE ARTICULATED BASIS FOR HER AWARD.

The arbitrator's sole rationale for declaring that the sixth sentence of § 8.12(a) can only mean that PACU nurses may not be assigned to on-call on weekend nights was "because any proffered interpretation that would expand the instances in which PACU can be required to go on-call would <u>render the provision meaningless and unnecessary</u>." Thus, she concluded that the sixth sentence was clear, unambiguous and not subject to interpretation solely because she concluded that, if PACU nurses could be required to stand on-call on weekend nights, the sixth sentence would be without meaning. As she explained:

> "Were I to adopt the Employer's view, that the weekday evening PACU on call rotation language does not limit its right to assign PACU nurses on-call weekend evenings, <u>it would render that phrase without meaning</u>."

Arbitrator's Decision, p. 8 (emphasis added).

This reasoning by the arbitrator is completely and palpably faulty. No judge or group of judges could conclude that by assigning PACU nurses to weekend on-call renders the sixth sentence "meaningless" and "unnecessary." Under the first five sentences of § 8.12(a) the parties established that the general methodology for determining who is required to stand on-call in a particular unit (including the PACU) would be to "look first to qualified volunteers and then assign the least senior qualified nurses in the unit to fill the number of on-call positions." Thus, the selection method for on-call is generally made based solely on volunteers and seniority, i.e. the least senior nurses get stuck with the on-call duty. However, when the hospital did away with full-time PACU nurses on the night shift during weekdays, the parties changed the method of

selection of who would be required to stand on-call only for that specific period, i.e. night shifts on weeknights. Thus, the parties agreed that: "All Post Anesthetic Care Unit nurses (PACU), on a rotating basis, will share on-call from 12:30 to 6:30 a.m., Tuesday through Saturday." Thus, the parties agreed that for this limited number of night shifts, i.e. during the week, the PACU nurses would all be required to stand on call on a rotating basis and the Hospital would not have to rely on "volunteers" or sticking the most junior qualified PACU nurse with the duty. Given this self-evident meaningful purpose of the sixth sentence of § 8.12(a), it simply cannot rationally be concluded that by having PACU nurses stand on-call on the weekend under the general method of selection, i.e. volunteers and seniority, renders the sixth sentence "meaningless and unnecessary." In fact, such a sentence is "necessary", if, as the parties unambiguously agreed, they desired to be sure that for five particular night shifts in the PACU, instead of volunteers and the least senior nurses, "all" PACU nurses "on a rotating basis" would share the burden of on-call. No judge or group of judges could reach any other conclusion. It is simply illogical and palpably incorrect to assume, as the Arbitrator did, that the only purpose of the sixth sentence could be to foreclose PACU nurses from standing on-call at all on the weekend night shifts utilizing the pre-existing general rule for their selection, i.e. volunteers and least seniority.

Because the Arbitrator's reasoning was "palpably faulty" she exceeded her authority. It would also appear that her decision was "mistakenly based on a crucial assumption," i.e. that the sixth sentence had no alternative meaning. Since her faulty reasoning and mistaken assumption was the 'sole articulated basis" for her decision, at a

minimum the Court should vacate the award and order a new arbitration, as the Court did in <u>Electronics Corporation of America</u> v. <u>International Union of Electrical, Radio and Machine Workers, AFL-CIO</u>, 492 F.2d 1255 (1st Cir. 1974).

III.  THE ARBITRATOR EXCEEDED HER AUTHORITY BY ADDING LANGUAGE TO THE SIXTH SENTENCE OF SECTION 8.12(a).

The Arbitrator exceeded her authority under the contract by modifying a provision of the agreement, despite the unequivocal language of Section 6.4 which provides, in relevant part, "[N]o arbitrator shall have any authority or power directly or indirectly to award or determine, any change in, modification or alteration of, addition to, or detraction from, any of the provisions of this Agreement." Agreement, § 6.4. Specifically, in her award the Arbitrator concluded that the relevant language in § 8.12(a), "defines a limited time period during which PACU nurses can be assigned on-call" and further stated that "it [the language in Section 8.12(a)] specifically states that the *only* time PACU nurses can be assigned to on-call is weekday nights." (emphasis added). Arbitrator's Decision, p. 8. In fact, the language in § 8.12(a) does *not* specifically state that the "only" time PACU nurses can be assigned to on-call is weekday nights. The Arbitrator clearly modified and made an "addition to" the contractual language, despite her lack of authority to do so.

Section 6.4 plainly prohibits any arbitrator from modifying, changing or adding to the provisions of the agreement. By adding the word "only" to the language of § 8.12(a), the Arbitrator modified a term of the agreement, thereby exceeding her authority under the contract. In doing so, she impermissibly limited the application of that provision, ultimately concluding that Plaintiff violated the "express" language of the agreement, when that sentence, in fact, does not expressly include the word "only." While an

arbitrator's *interpretation* of the contract may not be disturbed on review, where an arbitrator *modifies* the contract, in violation of the explicit language of the contract, the arbitrator's decision should be vacated. To hold otherwise would "not only do violence to Section [8.12(a)] of the Agreement, which prohibits the arbitrator from modifying, changing or adding to the provisions of the contract, but would promote industrial anarchy by encouraging the exercise of ad hoc arbitral revision of collective bargaining agreements." Georgia-Pacific, supra 864 F.2d at 945 (vacating arbitrator's award where the arbitrator exceeded his authority by failing to impose a discharge penalty on employee, as required by the plain language of the agreement).

The only way that the Arbitrator could avoid crediting the Hospital's reasonable interpretation of the sixth sentence was to conclude it violated the "express language of this Agreement." Agreement, § 6.4, p. 14. However, the parties did not put in the express language of "only." Rather, contrary to her authority, the Arbitrator added it. Had the parties to the collective bargaining agreement intended for § 8.12(a) to be so limited, they could have easily included the term "only" in the provision. However, this was not done. By changing the terms of the sixth sentence in § 8.12(a), the Arbitrator impermissibly modified the bargained-for terms of Agreement and, thereby, exceeded her authority. Her award must be vacated.

## CONCLUSION

For the foregoing reasons, the Court should vacate the arbitral award. Or, in the alternative, the Court should vacate the arbitral award and order a new arbitration.

SALEM HOSPITAL

By its attorneys,

*/s/ Richard P. Ward*
*/s/ Michelle H. Lawson*

Richard P. Ward, BBO # 516040
Michelle H. Lawson, BBO # pending
Ropes & Gray LLP
One International Place
Boston, MA  02110
(617) 951-7000

Dated: December 6, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 12-6-04         R. P. Ward