UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALEM HOSPITAL, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　)<br>V. 　　　　　　　　　　)<br>　　　　　　　　　　　　)<br>AMERICAN FEDERATION OF )<br>STATE, COUNTY, MUNICIPAL )<br>EMPLOYEES, COUNCIL 93, )<br>　　　　Defendant. )<br>＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿) | C.A. No. 03 CV 12650 RGS |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.　　FACTS

This case arises out of an arbitration that resolved a union contract grievance between Salem Hospital ("the Hospital") and the American Federation of State, County and Municipal Employees, Council 93 ("AFSCME" or the "Union"). The Hospital and AFSCME are parties to a collective bargaining agreement ("the "Agreement"), which covers the wages, hours, and terms and conditions of employment for all full-time and regular part-time Registered Nurses employed by the Hospital. The Agreement also contains a detailed grievance and arbitration procedure. Under Article 6.1 of the Agreement, "[t]he grievance and arbitration procedure provided for herein shall be the exclusive procedure for resolution of disputes concerning the interpretation or application of the Agreement." Moreover, under Article 6.5, "[t]he decision of the arbitrator on any grievance properly submitted to her or him hereunder, if within the scope of his or her authority and power, shall be final and binding upon the Hospital, the Union and the aggrieved nurse."

Article 8.12(a) of the Agreement between the Hospital and AFSCE provides, in relevant part, that "[a]ll Post Anesthesia Care Unit nurses (PACU), on a rotating basis, will share on-call from 12:30 a.m. to 6:30 a.m., Tuesday through Saturday." Francine O'Connell, a Registered Nurse who was on the PACU call-rotation for weekends, filed a grievance under the Agreement alleging that the Hospital had violated the Agreement by requiring PACU nurses to serve on-call on weekends (Sunday and Monday). O'Connell argued that the relevant part of §8.12(a) of the Agreement, as set out above, restricts PACU on-call to 12:30 a.m. – 6:30 a.m. Tuesday through Saturday. O'Connell argued (and the Arbitrator later found) that the language of the Agreement clearly indicates so on its face. The grievance was initially denied by the Hospital. Pursuant to terms of the Agreement, AFSCME filed a demand for arbitration. Through the American Arbitration Association an arbitrator was mutually selected, who presided over a two-day hearing. The parties were unable to stipulate to an issue; they authorized the arbitrator to formulate the issue in dispute. After hearing the parties' evidence and arguments, the Arbitrator determined the issue to be as follows:

> Whether the Hospital violated Article 8.12(a) of the parties' Collective Bargaining Agreement when it assigned PACU nurses on-call duties during the night portions of the 48 hour weekend period? If so, what shall be the remedy?

In her decision and award of November 19, 2003, the Arbitrator concluded that the relevant language in §8.12(a) "defines a limited time period during which PACU nurses can be assigned on-call." Accordingly, the Arbitrator found that "the Employer did violate the terms of the Agreement when it assigned PACU nurses on-call weekend nights."

The Hospital now challenges the arbitrator's decision, arguing that the arbitrator exceeded her authority by reversing and setting aside the Hospital's alleged authority to place PACU nurses on-call at other times than those mentioned in §8.12(a). Unless the Court is persuaded that the arbitrator acted beyond the scope of her authority, the Hospital's challenge must fail. Accordingly, AFSCME files its motion for summary judgment to confirm the arbitrator's award.

## II.   ARGUMENT

### A.   THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial.

In the case at bar, there are no disputes of material fact. The Hospital argues from undisputed facts that there are grounds upon which the arbitration award can be vacated. It is AFSCME's position that, on the contrary, the Hospital has failed to establish grounds that would permit this Court to vacate the arbitration award under this Court's narrow authority to review arbitrators' awards. Summary judgment in favor of the Defendant Union is, therefore, appropriate.

### B.   THE PLAINTIFF HAS FAILED TO ESTABLISH GROUNDS UPON WHICH THE ARBITRATOR'S AWARD MAY BE VACATED.

The Hospital seeks to overturn an arbitration award duly entered in accordance with the parties' collective bargaining agreement. The Hospital's burden is a heavy one, as the scope of judicial review of a labor arbitration is extremely narrow.

Section 10 of the Federal Arbitration Act (FAA) lists the circumstances in which a court has the authority to vacate an award, including certain types of misconduct by the arbitrator or where the arbitrator "exceeded [his] powers." 9 U.S.C. § 10(a)(4). To determine whether an arbitrator has exceeded his authority under § 10, however, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts," United Paperworkers Int'l, 484 U.S. at 38, and "even where such error is painfully clear, courts are not authorized to reconsider the merits of arbitration awards," Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990) (internal quotation marks omitted).

The First Circuit has repeatedly held that review of an arbitrator's decision is "extremely narrow and exceedingly deferential." Keebler Co. v. Truck Drivers, Local 170, 247 F.3rd 8, 10 (1st Cir. 2001), Bull HN Info. Sys., Inc. v. Hutson, 229 F.3rd 321, 330 (1st Cir. 2000). Indeed, "judicial review of an arbitration award is among the narrowest known to the law." Gupta v. Cisco Systems, 274 F.3rd 1, 3 (1st Cir. 2001) (quoting Coastal Oil v. Teamsters Local A/W, 134 F.3rd 466, 469 (1st Cir. 1998).

In First Circuit, an arbitrator's award is vulnerable only: 1) where an award is contrary to the plain language of the contract, or 2) where it is clear on the face of the record that the arbitrator recognized applicable law but chose to ignore it. See Bull HN Sys., id. at 330-331. In the latter instance, the court's review stops short unless it finds "manifest disregard of the law."

Neither of these factors is present in this case.

Indeed, no statute is urged of which the arbitrator stands in manifest disregard.

Nor (ultimately) is there any plain-language contract article to which the award is contradictory; the controversy between the parties arose, below at arbitration as before the Court, from an ambiguity, an omission from which an inference of managerial rights derogated or managerial rights reserved is the sole question. The arbitrator having answered that question, no ground for appeal obtains.

The First Circuit is, of course, building on the same blocks as courts throughout the country, including the Supreme Court.

The Supreme Court stated in United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 38 (1987), that

> as long as the arbitrator is even arguably construing
> or applying the contract and acting within the scope
> of his authority, that the court is convinced
> he committed serious error does not suffice to
> overturn his decision. (NOTE: the "serious error"
> is in context of errors of fact or law)

Earlier, in W.R. Grace & Co. v. Local 759, International Union of Rubber Workers, 461 U.S. 757 (1983), the Court had characterized Federal courts as "not entitled to review the merits" of contract disputes decided by arbitrators even when the basis for the given arbitrator's decision is "ambiguous."

A 6th Circuit opinion posits not merely a presumption but what it called a "strong presumption" in favor of arbitration of contract disputes and of arbitral authority, to which a court must defer. Champion

International Corporation v. United Paperworkers International Union, 779 F.2d 328, 335 (6th Cir. 1985) (citations omitted).

The parties here not only did not limit the arbitrator's authority; they deferred to her on issue setting.

That factual deference at the underlying hearing exemplifies the legal deference to arbitration generally; an arbitrator, mutually selected by the parties, sits with the parties to make determinations because they agreed. "(A)rbitration is part and parcel of the collective bargaining process..." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960).

One might think that that case, in 1960, almost fifty years ago, laid to rest the old "reserved rights theory" under which employers had argued that they stood possessed of any rights not explicitly derogated or modified by contract. Well, there is no Eleventh Amendment in collective bargaining the way there is in our Constitution. While any employer remains free—as an argument of *interpretation* or *application* of any particular contract—that it still stands possessed of rights by virtue of any lacuna or silence (and the Hospital so argued below, albeit without success) that is a case-specific defense and not a theory any longer or a canon of construction for arbitrators nor enshrined as a ground to reverse arbitrators' awards in Federal courts. Nonetheless the Hospital arrives, like the Ghost of Christmas Past, invoking the discredited "reserved rights

theory" in what may be its last hurrah, a final echo from an era that ended when the Sixties began.[1]

Here, the arbitrator did nothing extraordinary, and only deemed that certain contract words (Article 8.12(a)) mean nothing if the on-call procedure applies every day at the employer's whim. While the Hospital argued below and offered evidence attempting to substantiate a claim of reserved managerial rights, it failed to persuade. Sometimes this happens. But, much less often, an employer recycles its arbitration argument to this Court. It argues that the Hospital's history. History is always significant and relevant, but that is at arbitration. There is no appeal from history as written (or weighed) by an arbitrator. Accordingly, the Court must reject that argument that the context of negotiations so strongly requires interpreting the words of Article 8.12(a) as an expansion of on-call from weekdays to week ends, that no other interpretation is legal, as a matter of law. The Arbitrator was not convinced. Is the Judge convinced?

Of course, the Court will factor in the arbitrator's opinion instead of his individual conviction. The Judge is not in a competition for "Best Interpretation of Article 8.12(a)."

That is, the parties agreed to arbitrate instead of litigate.

They must not—neither of them, employer or union—look to the court to tell them what they agreed to, in agreeing to Article 8.12(a). See, e.g., Timothy J. Heinsz,

---

[1] Arbitrator Charles Killingsworth lectured arbitrators in the aftermath of this 1960 case, applying it to mean that "to find out what the functions of management are, you have to interpret the agreement, and you have to interpret its silence as well as its language; silence alone cannot automatically be taken to give management unfettered discretion..." Killingsworth, Management Rights Revisited, Proceedings of the 22nd Annual Meeting of the National Academy of Arbitrators, 1, 9 (1969).

Judicial Review of Labor Arbitration Awards: The Enterprise Wheel Goes Around and Around, 52 Mo. L. Rev. 243 (1987).

If, in the honest opinion of the mutually-selected adjudicator, the contract means X, then it does not matter that the Judge may think it means Y. Whatever impression the Judge may have—the Judge may greatly prefer and find strongly persuasive the Hospital's argument—the dispositive point in finality of an arbitrator's decision is not what but who. This is Federal "black letter" law, at least since 1960. See, e.g., Charles Morris, Twenty Years of Trilogy: A Celebration, 33 Nat'l Acad. Arb. 331 (1980). Courts do not condemn defective arbitrators; they celebrate them.

This case, unusual to be brought as a genre, is not at all unusual in its basis.

"The arbitrator was wrong," the employer says. "Let us have another bite at the apple and we will convince you on the merits."

The parties' arbitrator had to work her way through or between the Scylla and Charybdis of "Implicitly Reserved Management Rights" and "Literally Precluded Options," between the employer's proffer of evidence and argument and the union's. The omission of night weekend "on call" coverage by nurses is factually indisputable; the Article is before this Court, and, on its face, the on call schedule appears, but does not refer to weekend nights.

Is this omission meaningful?

Is the Hospital literally precluded from imposing "on call" except as expressly allowed by contract?

The arbitrator concluded after a full and fair hearing, Yes.

Now, the Court may take notice of the context that "on call" is extraordinary. Usually, a nurse—like anyone else, including judges—knows when he/she is on duty and when he/she is off duty, when he/she is working, and when he/she is not working. But this business of being on a status of "at work if called" is unusual. The remainder of the parties' contract, which provides for wages and hours, provides for regular shifts and for overtime at premium pay. The grievance before the arbitrator was essentially a spin off of wages and hours, a compensation issue rather than a core managerial function. The arbitrator merely held the employer to the literal terms of the contract, an extremely conservation adjudication. She interpreted the omission of weekend nights as a brake on the use of "on call" to nurses at those extra-contractual periods. It was a decision notably derived from close scrutiny of the contract, not in conflict with the other articles defining or describing regular hours and overtime, and by no means imposes any requirement not bargained between the parties. Beacon Journal Publishing Company v. Akron Newspaper Guild, Local No. 7, 114 F.3rd 596 (6th Cir. 1997). It was an honest decision; the requirement that the arbitrator decide in good faith was met. National Wrecking Company v. Teamsters Local 731, 990 F.2nd 957, 960 (7th Cir. 1993).

Thus, finally, finding no exclusion of this matter from arbitration, nor any restriction on the arbitrator which she has not met, e.g., that her decision follow a full and fair hearing and be product of honesty and good faith, this Court is obliged as a matter of law to dismiss the Hospital's appeal and to affirm the underlying award.

CONCLUSION

The Court is requested to enter Judgment dismissing the appeal and ordering that the award is confirmed and to be obeyed by the parties.

Respectfully submitted,

*Wayne Soini*

WAYNE SOINI, ESQ.
AFSCME COUNCIL 93, AFL-CIO
8 Beacon Street
Boston, MA 02108
Tel.: (617) 367-6024, ext. 4
DA: DECEMBER 15, 2004