UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12650- RGS

SALEM HOSPITAL

v.

AFSCME, COUNCIL 93

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

September 7, 2005

STEARNS, D.J.

This is an action brought under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to vacate an arbitration award issued under a collective bargaining agreement (CBA) between plaintiff Salem Hospital (Salem) and the defendant AFSCME, Council 93, AFL-CIO (AFSCME). The award involves a dispute over the weekend night shift duties of Post Anesthesia Care Unit (PACU) nurses. Salem argues that the arbitrator exceeded her authority "by ignoring the clear and unambiguous language of the collective bargaining agreement and because the arbitrator's decision was based on palpably faulty reasoning." AFSCME by way of counterclaim requests that the court confirm the arbitrator's award.

BACKGROUND

Salem is a not-for-profit Massachusetts corporation and an employer within the meaning of the LMRA. AFSCME Council 93 is a labor organization as defined by 29 U.S.C. § 152(5) of the LMRA and is the exclusive bargaining agent for PACU nurses.

Salem and AFSCME are parties to a CBA which provides, in relevant part, that "all Post Anesthesia Care Unit (PACU) nurses, on a rotating basis, will share on-call from 12:30 a.m. to 6:30 a.m., Tuesday through Saturday." See Complaint, Ex. B, Section 8.12(a).

Francine O'Connell, a registered nurse assigned to PACU weekend call-rotation, brought a grievance alleging that Salem had violated the CBA by requiring PACU nurses to serve on-call during weekends. In her grievance, she argued that Section 8.12(a) of the CBA restricts the on-call duties of PACU nurses to the period 12:30 a.m. - 6:30 a.m., Tuesday through Saturday. After Salem denied her grievance, AFSCME filed a demand for arbitration. The American Arbitration Association appointed Diane Zaar Cochran, Esq., as the arbitrator. A two-day arbitration hearing ensued.

Unable to agree among themselves, the parties asked the arbitrator to frame the issues to be arbitrated. She defined the crux of the dispute as "[w]hether the Hospital violated Article 8.12(a) of the parties' Collective Bargaining Agreement when it assigned nurses on-call duties during the night portions of the 48-hour weekend period? If so, what shall be the remedy?" The arbitrator identified the following provisions of the CBA as controlling.

> 4.1 <u>Management Rights</u>
>
> The Union recognizes the right of the Hospital to operate and manage the Hospital. All rights, functions, prerogatives, and discretion of the management of the Hospital, formerly exercised, potentially exercisable, or otherwise, are vested exclusively in the Hospital except to the extent that such rights are specifically and explicitly modified by the express provisions of this Agreement. Without limiting the generality of the foregoing, the Hospital reserves to itself, subject only to the express provisions of this Agreement, the management of the Hospital has the right to: direct the nurses and assign work; . . .

6.4 <u>Arbitrator's Function and Authority</u>

The function of the arbitrator is to determine the interpretation and application of the specific provisions of this Agreement to the grievance as submitted in accordance with Section 6.3. There shall be no right to arbitration of a grievance to obtain, and no arbitrator shall have any authority or power directly or indirectly to award or determine any change in, modification or alteration of, addition to, or detraction from, any of the provisions of this Agreement. No arbitrator shall have any authority or power to reverse, set aside or modify any determination made by the Hospital pursuant to the provisions of this Agreement unless he or she finds that such determination was arbitrary or capricious, without any reasonable basis or in contravention of express language of this Agreement which is not subject to interpretation.

8.12 <u>On-Call Pay</u>[1]

(a) On-Call. The Hospital reserves the right to establish and disestablish on-call in particular units when it determines such is necessary. The Hospital will determine, in its judgment, the number of nurses needed to have reasonable allocation of [sic] on-call assignments. It will look first at qualified volunteers and then assign the least senior qualified nurses in the unit to fill the number of on-call positions. Nurses who are assigned to be on-call will be provided with long-range beepers. All Post Anesthesia Care Unit nurses (PACU), on a rotating basis, will share on-call from 12:30 a.m. to 6:30 a.m., Tuesday through Saturday. PACU day rotating nurses will be assigned to be on-call to cover an unplanned night shift absence (e.g., illness) rather than be assigned to work the scheduled night shift.

Evidence presented at the arbitration hearing established that an agreement between Salem and AFSCME in November of 1992 eliminated what had been a fully staffed PACU night shift. In its place, PACU nurses were to be called in as needed, including during the 48-hour weekend period (Saturday morning at 7:00 a.m. through

---

[1]There are competing versions of Section 8.12(a), although the differences are not material. The court will use the version set out in the Arbitrator's Decision.

Monday morning at 7:00 a.m.). This practice has endured for "well over ten years." As the arbitration explained,

> [t]he Hospital determined that on-call assignment of PACU nurses on weekend nights was necessary in order to provide adequate patient safety. While other specialized nursing professionals, such as Surgicenter nurses, are able to handle outpatient surgery cases, only PACU nurses have the skill level required to provide post-anesthesia nursing services following complex surgery. For this reason, once it concluded that one PACU nurse was needed on-call during the 11:00 p.m. to 7:00 a.m. portions of the weekend period, the Hospital determined that only PACU nurses are qualified to be on-call during those hours. During other weekend hours, Surgicenter nurses are also assigned to on-call status, but they handle only those cases within their skill level.

Arbitrator's Decision at 4. The arbitrator then concluded that the relevant language in Section 8.12(a) "defines a limited time period during which PACU nurses can be assigned on-call." The arbitrator stated that "it [the language in Section 8.12(a)] specifically states that the only time PACU nurses can be assigned to on-call is weekday nights." (Emphasis added). Consequently, she found Salem in violation of Section 8.12(a). The arbitrator explained:

> [w]ere I to adopt the Employer's view, that the weekday evening PACU on-call rotation language does not limit its right to assign PACU nurses on-call weekend evenings, it would render that phrase without meaning.

Id., at 8. In granting a remedy, she ordered that Salem "cease and desist from assigning PACU nurses on-call duties during the portions of the 48-hour weekend period." Id., at 9. On December 31, 2003, Salem filed this action seeking to vacate the award.

## DISCUSSION

The court's role in reviewing an arbitrator's decision is very limited. "Unless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,'

4

a court is bound to enforce the award and is not entitled to review the merits of the contract dispute."  See W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764 (1983), quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  See also United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987).  Consequently, the review of an arbitrator's decision is "extremely narrow and exceedingly deferential."  Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001), quoting Wheelabrator Envirotech Operating Servs. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996).  See also Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000).  "Judicial review of an arbitration award is among the narrowest known to the law."  Gupta v. Cisco Systems, Inc., 274 F.3d 1, 2 (1st Cir. 2001), quoting Coastal Oil v. Teamsters Local a/w, 134 F.3d 466, 469 (1st Cir. 1998).  In this Circuit, an arbitrator's award is vulnerable only "where [the] award is contrary to the plain language of the contract, and instances where it is clear on the face of the record that the arbitrator recognized applicable law and then ignored it."  Bull HN Info. Sys., Inc., 229 F.3d at 330-331, quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir 1990).  The court may not vacate an arbitrator's award merely because the arbitrator misinterprets a contract where there is "room to do so."  Georgia-Pacific Cor. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1988).  However, if the arbitrator fails to apply the plain meaning of the contract, then he or she has exceeded his or her authority.  Id. ("[I]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the Agreement.").  See also El Mundo Broadcasting Corporation v. United Steelworkers of America AFL-CIO, 116 F.3d 7, 10 (1st Cir. 1997)

(arbitrator ignored the "essence" of the agreement "because [he] enlarged the agreement and exceeded his authority under the CBA.").

Salem asserts that the arbitrator exceeded her authority by adopting an unreasonable interpretation of the first sentence of Section 8.12(a); by inserting language that does not appear in the fifth sentence of Section 8.12(a); and by adopting a "palpably faulty" rationale for her decision. Salem relies on the language in Sections 4.1 and 8.12(a), which vests it with the "exclusive" rights "to assign work" and to "determine and redetermine policies, practices, methods, procedures and conditions related to . . . staffing . . . [and] to establish and disestablish on-call in particular units when it determines such is necessary." Salem contends that under the terms of the CBA, when it makes a determination of "necessity," it may change how and to whom it assigns on-call duty. Salem also argues that the fifth sentence of Section 8.12(a) "is subject to interpretation," and challenges the arbitrator's determination that the relevant language in Section 8.12(a) "defines a limited time period during which PACU nurses can be assigned on-call" and "specifically states that the only time PACU nurses can be assigned to on-call is weekday nights." Salem asserts that Section 8.12(a) does not state that the "only" time PACU nurses can be assigned to on-call is weekday nights and that the arbitrator made an "addition to" the contractual language which entirely changes the parties' agreement.

I agree with the Salem's argument that

> [u]nder the first five sentences of § 8.12(a) the parties established that the general methodology for determining who is required to stand on-call in a particular unit (including the PACU) would be to "look first to qualified volunteers and then assign the least senior qualified nurses in the unit to fill the number of on-call positions." Thus, the selection method for on-call is

>   generally made based solely on volunteers and seniority, i.e. the least senior nurses get stuck with the on-call duty. However, when the hospital did away with full-time PACU nurses on the night shift during weekdays, the parties changed the method of selection of who would be required to stand on-call only for that specific period, i.e. night shifts on weeknights. Thus, the parties agreed that: "All Post Anesthetic Care Unit nurses (PACU), <u>on a rotating basis</u>, will share on-call from 12:30 - 6:30 a.m., Tuesday through Saturday." Thus, the parties agreed that for this limited number of night shifts, i.e. during the week, the PACU nurses would all be required to stand on call <u>on a rotating basis</u> and the Hospital would not have to rely on "volunteers" or sticking the most junior qualified PACU nurse with the duty. Given this self-evident meaningful purpose of the sixth sentence of § 8.12(a), it simply cannot rationally be concluded that by having PACU nurses stand on-call on the weekend under the general method of selection, i.e. volunteers and seniority, renders the sixth sentence "meaningless and unnecessary." In fact, such a sentence is "necessary", if, as the parties unambiguously agreed, they desired to be sure that for five particular night shifts in the PACU, instead of volunteers and the least senior nurses, "<u>all</u>" PACU nurses "on a rotating basis" would share the burden of on-call.

Plaintiff's Memorandum, at 8-9 (underline in original).

Significantly, the arbitrator "agree[d]" that Salem's "determination that the high skill set of PACU nurses was required for patient care during the weekend nights was not arbitrary, capricious or without a reasonable basis," that the factual predicate for application of this language, that is, "[w]hen [Salem] determines such is necessary" existed, and that Salem's determination of necessity was a "reasonable, logical and safety sensitive decision." <u>See</u> Arbitrator's Decision, at 7-8. She then ignored her own findings and rewrote Section 8.12(a) by inserting the word "only."

In most cases, an arbitrator's faulty deduction from otherwise correct factual findings is not a basis upon which an arbitrator's award can be overturned. Here, however, the arbitrator did not simply err in construing the terms of the CBA, she created a work rule never contemplated or bargained for by the parties. <u>See</u> <u>Wheelabrator</u>, 887 F.3d at 45-46.

Her addition of the word "only" in designating the manner in which PACU nurses would be assigned on-call duties on weekday nights completely transforms the purpose, intent and meaning of Section 8.12(a).  She further ignored Section 6.4's limitation on her authority to revise an interpretation by Salem of a provision of the CBA without a predicate finding that the interpretation was arbitrary or capricious.  Consequently, I find her decision to be "palpably faulty" and "contrary to the plain language of the contract."  <u>Bull HN Info. Sys., Inc.</u>, 229 F.3d at 330-331.  It must, therefore, be vacated.

### ORDER

For the foregoing reasons, Salem's motion for summary judgment is <u>ALLOWED</u>.  Council 93's cross-motion for summary judgment is <u>DENIED</u>.  The arbitrator's award is <u>VACATED</u>.  Salem will submit a proposed form of final judgment within ten (10) days of the date of this opinion.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE